UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELICA FRANCES,<br><br>Plaintiff,<br><br>v.<br><br>ACCESSIBLE SPACE, INC., et al.,<br><br>Defendants. | No. 2:16-cv-1016-JAM-GGH<br><br>FINDINGS AND RECOMMENDATIONS;<br>ORDER |

*PROCEDURAL HISTORY*

Plaintiff filed her personal injury complaint on May 1, 2015. ECF No. 1. Defendants Accessible Space, Inc. ["Accessible"] and South Lake Tahoe Supportive Housing, Inc. ["South Lake Tahoe:] filed a joint Motion to Dismiss on September 27, 2016, and the matter was originally set for hearing on November 15, 2016. ECF No. 9. Plaintiff opposed the Motion on October 18, 2016, ECF No. 12, and the court vacated the matter from its calendar and took it under submission in an Order dated November 9, 2016. ECF No. 15. In an Order dated January 3, 2017, the court dismissed the complaint with leave to amend, ECF No. 16, and plaintiff filed her First Amended Complaint ["FAC"] on January 23, 2017. ECF No. 17.

Defendants moved to dismiss the First Amended Complaint and noticed a hearing to be held on April 4, 2017 before Judge Mendez. ECF No. 18. Before the hearing was held counsel for plaintiff notified the court that the action had been conditionally settled, ECF No. 19, and the

hearing date was cancelled by a minute Order entered on the same day. ECF No. 20. On April 25, 2017 plaintiff's counsel moved to withdraw, ECF No. 21, defendants filed a Statement of Non-Opposition on June 3, 2017, ECF No. 22, and the district court granted the motion on June 13, 2017 by minute order. ECF No. 23.

On August 9, 2017, plaintiff moved for a temporary stay of proceedings, ECF No. 24, which the district court denied by a minute order dated August 14, 2017, instead ordering plaintiff to find new counsel within 60 days, and referred the matter to the magistrate judge for further proceedings. ECF No. 25. Plaintiff did not acquire new counsel, instead proceeding with the action in pro se status.

On October 18, 2017 defendants filed a new Motion to Dismiss and calendared it for hearing before the magistrate judge on December 7, 2017. ECF No. 26. The matter was rescheduled for hearing to be held on March 22, 2018 by minute order. ECF No. 34.

*PLAINTIFF'S AMENDED COMPLAINT[1]*

Plaintiff, a physically disabled adult, resides in HUD-subsidized housing for the disabled in South Lake Tahoe and has since the Fall of 2009. ECF No. 17 at ¶ 18.[2] The property is alleged to be owned by defendant South Lake Tahoe and managed by defendant Accessible, a nationwide housing and service provider for seniors and adults with physical disabilities. Id. at ¶¶ 11-14. The property is subsidized by HUD through the Federal Housing Act. Id. ¶ 12. Plaintiff identifies her disabilities as Systemic Lupus Erythematosus ("SLE"), popularly described as an autoimmune disease in which the body's immune system mistakenly attacks healthy tissue and which can affect skin, joints, kidneys, brain and other organs, U.S. Nat'l Library of Medicine, MedlinePlus (7/14/17), Raynaud's Disease which is often associated with SLE as a secondary effect, and which causes areas of the body to feel numb and cold in response to cold temperatures or stress, Mayo Clinic Patient Care and Health Information, 2017, and multiple metal implants. Id. at ¶152-155.

---

[1] For purposes of addressing this motion the court takes accepts the facts alleged by plaintiff as true.
[2] The court received an email from plaintiff suggesting that she had now vacated her housing.

2

Plaintiff pleads the following claims, which she refers to as "Counts;"

Count 1: Negligence and Premises Liability insofar as the heating system is defective in one bedroom of plaintiff's apartment rendering it uninhabitable in the colder months of the year given her disability. Plaintiff notified defendants of this deficiency in 2009 but it was not until June 6, 2014 that the problem was solved by installation of a baseboard heater. Id. at ¶¶ 17-19. Additional defects included water leaks identified in the kitchen, bathroom and sprinkler locations throughout the residence, Id. at ¶¶ 31-38, and black mold on walls, ceilings and window sills, ¶¶ 39-40. Defendants are alleged to have breached their duty to maintain habitable, clean, hygienic and safe premises based on the foregoing and their failure is alleged to have caused physical illness and emotional and mental distress. Id. at ¶ 50.

Count 2: Breach of contract insofar as the lease for plaintiff's residence committed to, but failed to provide, heat, sewers, rubbish service and water and to comply with all applicable federal, state and local health and housing and building codes which defendants allegedly have consistently failed to adhere to. Id. at ¶54-99.

Elements of the breach alleged include repeated and unremedied failures to properly compute her rent and recertification credits for medical expenses from 2009 to the present, that as a condition to addressing the problem defendants required plaintiff to turn over her private medical records in addition to the normal certification statements required in these circumstances leading to long-term overcharges which have yet to be returned to plaintiff. In addition, during the course of these events she was repeatedly served with notices to pay rent despite the interventions of HUD leading to physical and mental injuries to plaintiff. Id. at ¶¶ 64-99.

Counts 3 amd 4: Violations of the federal Fair Housing Act, 42 U.S.C. §§ 3601 et seq. and 804 which among other things requires provision of continued benefits of a program that receives federal financial assistance for which plaintiff is qualified based on the facts recounted in the FAC. Id. at ¶¶ 100-140.[3]

////

---

[3] In this section of the FAC plaintiff describes with greater particularity how the deficiencies complained of impact her as related to the specific disabilities from which she suffers.

Count 4: Violation of California Health and Safety Code § 18920.3 and California Civil Code § 1941.1 as a result of the derelictions alleged in the complaint.[4] Id. at ¶¶ 126-140.

Count 5: Violation of the federal Rehabilitation Act of 1972 29 U.S.C. §§ 701 et seq. Id. at ¶¶ 141-167.

Count 6: Violation of 42 U.S.C. § 2000(a) based on her race and religious affiliation. Id. at ¶¶ 168-176.

Count 7: Violation of California Civil Code § 1941.1 and California Health and Safety Code § 17920.3, which are provisions similar to the federal program discussed above. Id. at ¶¶ 177-183.

Count 8: Violation of California Business and Professions Code §§ 17200, et seq. which prohibit unfair business practices such as those described throughout the earlier sections of the FAC. Id. at ¶ 184-188.

Count 9: Breach of the Warranty of Habitability found in California Civil Code § 1941.1 Id. at ¶¶ 189-193.

Count 10: Negligent Infliction of Emotional Distress. Id. at ¶¶ 194-197.

Count 11: Violation of the Unruh Civil Rights Act, California Civil Code. §§ 51, 52 alleging discrimination based upon her race. Id. at ¶¶ 198-204.

Count 12: California's FEHA statute, Cal. Govt. Code § 12955 under which plaintiff pleads disability discrimination as well as racial and religious discrimination.

In light of the foregoing plaintiff seeks general damages, economic damages, past and future medical expenses and costs and loss of income flowing from the alleged breaches by defendants.

*DEFENDANTS' MOTION TO DISMISS (Merits)*

A. *Judicial Notice*

Defendants submit 70 pages of administrative materials pertinent to a HUD investigation and Agreement concerning some of plaintiff's claims. Defendants do not argue how judicial notice of

---

[4] Counts 5 through 7 are based on the same factual premises as are the federal claims.

4

these materials is pertinent to the motion to dismiss; nor do they do argue the administrative proceedings bar this action in any way.

It appears that defendants would desire to have the court take judicial notice of the truth of the facts contained therein. That the court may not do:

> While the court may take judicial notice of the general meaning of words, phrases, and legal expressions, documents are judicially noticeable only for the purpose of determining what statements are contained therein, not to prove the truth of the contents or any party's assertion of what the contents mean. *See*, e.g., *Hennessy v. Penril Datacomm Networks, Inc.* 69 F.3d 1344, 1354–55 (7th Cir.1995); *Wilshire Westwood Assocs. v. Atlantic Richfield Corp.*, 881 F.2d 801, 803 (9th Cir.1989).

> "Judicial notice is taken of the existence and authenticity of the public and quasi public documents listed. To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice." *Del Puerto Water Dist. v. U.S. Bureau of Reclamation,* 271 F.Supp.2d 1224, 1234 (E.D.Cal.2003). *See also*, *California ex rel. RoNo, LLC v. Altus Finance S.A.*, 344 F.3d 920, 931 (9th Cir.2003) ("requests for judicial notice are GRANTED to the extent that they are compatible with Fed. Rule Evid. 201 and do not require the acceptance of facts 'subject to reasonable dispute.' " quoting *Lee*, 250 F.3d at 690*); Kent v. Daimlerchrysler Corp.*, 200 F.Supp.2d 1208, 1219 (N.D.Cal.2002); *Weizmann Institute of Science v. Neschis*, 229 F.Supp.2d 234, 246–47 (S.D.N.Y.2002); *Happy Inv. Group v. Lakeworld Properties, Inc.*, 396 F.Supp. 175, 183 (N.D.Cal.1975); and *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F.Supp.2d 1236, 1242–43 (S.D.Cal.2000).

U.S. v. Southern California Edison, 300 F.Supp 2d 964, 975 (E.D. Cal. 2004) citing *inter alia* Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001).

Accordingly, to the extent that the existence of the documents *per se* is relevant, the court would take judicial notice of the HUD materials. However, there is no stated purpose as to why the facts of the decisions themselves are pertinent. Of course, to the extent that defendants desire to have the facts therein admitted for their truth to be used in adjudication of the Motion to Dismiss, such is improper. The request for judicial notice is denied.

////

////

5

1    *B.    The Court Does Not Have Subject Matter Jurisdiction and The Complaint States No*
2            *Federal Claim*

Defendants claim that only Count 3 sounds in federal law but in reality is merely another manifestation of her breach of contract claim, thus denying that this court has jurisdiction to proceed with the action. Defendants also make the common error of conflating failure to set forth a cognizable claim with the jurisdiction of the court to hear it (and to make that determination). They further argue that if the interpretation federal law is not in dispute, there can be no federal claim jurisdiction.

The undersigned takes up the last argument first as the argument is rather unique. If true, this doctrine would deny a federal forum for blatant acts of discrimination in cases where the federal discrimination law to be applied was without dispute. This cannot be so. While a dispute as to the interpretation of federal law may well be one of the characteristics of a claim over which a federal court has accepted jurisdiction, see cases cited by defendants, the dispute as to how federal law is to be interpreted is by no means the *sine qua non* of federal jurisdiction. Federal courts have jurisdiction over cases involving clearly established federal law as well. If defendants meant by their argument that the federal claim is a transparent attempt to engraft a state law claim onto federal law, for the reasons set forth below, this is not the case in the complaint before the court.

In order to predicate federal jurisdiction on a federal statute plaintiff must demonstrate that the statute in question or the rules enacted to enforce it create a private right of action and a remedy. Gonzaga University v. Doe, 537 U.S. 273, 283-284 (2002); Touche Ross & Co. v. Redington, 442 U.S. 560, 577-578 (1979). The fact that state law claims parallel the federal jurisdictional allegations do not suffice to confer federal question jurisdiction. Jairath v. Dyer, 154 F.3d 1280, 1284 (11th Cir. 1998). Here, however, plaintiff predicates her claims on violations of the Fair Housing Act (FHA) and Fair Housing Amendments Act, 42 U.S.C. section 3601 et seq. ([FHAA). The undersigned will simply use FHAA.[5] In general the FHAA prohibits

---

[5] The initial FHA did not take into account disability discrimination, but Congress amended the FHA in 1988 to include discrimination based on disability. See U. S. v. Mobile Home Park

discrimination resulting from a housing provider's "refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The cases are legion that a person who believes she has been discriminated against in housing on the basis of disability has stated a federal claim: City of Edwards v. Oxford House Inc., 514 U.S. 725, 729-730 (1995); Dubois v. Assoc etc., 453 F.3d 1175, 1178-1179 (9th Cir. 2006); Castellano v. Access Premier Realty Co., 181 F. Supp. 3d 798, 804-805 (E.D. Cal. 2016). The Ninth Circuit Court of Appeals has laid out the prerequisites for a successful pleading under this statute to be a demonstration by plaintiff that: (1) she suffers from a handicap as defined in the statute; (2) defendant knew or reasonably should have known of her handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant refused to make such accommodation. Giebeler v. M & B Associates, 343 F.3d 1143, 1147 (2003) citing United States v. California Mobile Home Park Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997). See also McGary v. City of Portland, 386 F.3d 1259, 1262 (9th Cir. 2004)( courts to accord "a liberal construction" to the Act's complaint-filing provision); Castellano v. Access Premier Realty, Inc., 181 F.Supp.3d 798, 805 (E.D.Cal. 2016)("accommodation is necessary when there is evidence showing that the desired accommodation will affirmatively enhance a disabled person's quality of life by ameliorating the effects of the disability"). The FHAA disability discrimination claim is very fact specific, Dubois, supra, and is generally not susceptible to a motion to dismiss. The above cases set forth what plaintiff needs to allege and she has done so here.

As is shown by the summary of plaintiff's allegations, supra, she has adequately identified her disabilities, the effects that defects identified in the apartment she rented from defendant had upon her, notice to the defendant of the defects, and defendant's delay in or outright refusal to correct the defects. Therefore she had pleaded a federal claim and this basis for defendants' motion to dismiss fails.

---

Mngt., 29 F.3d 1413, 1416 (9th Cir. 1994).

1 | Defendants do not attempt to brief why the Rehabilitation Act, 29 U.S.C. §§ 701 et seq., Count (5), is not a viable, albeit perhaps duplicative, federal claim. The undersigned will not find it barred on the present briefing.

There is merit to defendant's claim that plaintiff's Title VII, "2000a et seq." claim based on acts of discrimination based on race and religion. Section 2000a applies to public accommodations for transient lodging. 42 U.S.C. § 2000a(b). Other sections such 42 U.S.C. § 2000e apply to employment discrimination. Moreover, no allegation as to exhaustion of remedies has been made. See Wyatt v. Llijenquist, 96 F. Supp. 2d 1062, 1063-1064 (C.D. Cal, 2000), discussing exhaustion requirement of Section 2000a. Finally, plaintiff's barebones assertion that all of the alleged disability detriment she has suffered was also on account of her being the only Jewish, African-American in the complex is nothing more than a non-actionable conclusion. There are no facts suggesting that any of defendants' acts were occasioned by race or religious discrimination, and it cannot be that every untoward act taken against a person of African-American ancestry and/or the Jewish religion is *ipso facto* actionable discrimination. This claim should be dismissed. If plaintiff believes she can set forth a valid Title VII claim, she can so inform the court on objections.

As to the state claims, the court clearly presently has jurisdiction over these supplemental claims. 28 U.S.C. § 1367. Having established primary federal jurisdiction, the state claims raised by plaintiff are also within this court's jurisdiction pursuant to 28 U.S.C. § 1367 which grants supplemental jurisdiction over the state law claims which are sufficiently related to the federal claims. Here, both the state and federal claims arise from the same nucleus of operative facts and are therefore sufficiently related that they should be tied in a single litigation. Trustees of Construction Industry and Labaorers Health and Welfare Trust v. Desert Valley Landscape, 333 F.3d 923, 924 (2003); see also Wilson v. PFS, LLC, 493 F.Supp.2d 1122, 1124-1125 (S.D. Cal. 2007) *citing* 28 U.S.C. § 1367(c); Cross v. Pacific Coast Plaza Investments, L.P., 2007 WL 951772 *3 (S.D.Cal. 2007); Executive Software North America, Inc. v. USDC for Cent. Dist. of Calif.,24 F.3d 1545, 1557 (9th Cir. 1994).

////

Further, the state claims are closely related to the federal claims pleaded here. The California Fair Employment and Housing Act, Cal. Govt. Code §§ 12955(a) and 12927(c)(1) address the same issues regarding accommodations as does the FHAA, specifically by rendering refusal to make reasonable accommodations in cases such as this one actionable, and the Unruh Civil Rights Act, Cal. Civ. Code § 54.1(a)(3)(B) does the same. The California Supreme Court has also found that discrimination in housing on the basis of religion and ancestry constitutes unfair competition under Section 17200 insofar as the owners advertised amenities and services it did not provide. People v. McKale, 25 Cal.3d 626, 637 (1979). Here defendants advertise housing for persons protected under the FHAA but allegedly fail to preform consistently with the Act. Thus these state claims are "related" to the federal claims and jurisdiction over them is also justifiable under this theory.[6] The relatedness of the breach of contract claims and other claims is also patent.

*MOTION TO DISMISS (Statute of Limitations)*

A. *FHAA Causes of Action (Claims 3, 4 );Rehabilitation Act (Claim 5)*

Defendants assert that plaintiff's federal FHAA claims are barred by the applicable statute of limitations. This assertion is predicated on the assertion that a state statute of limitations must be borrowed from state law.

The applicable federal law does, however, provide its own explicit statute of limitations. The limitation is found in the statute sued under – the FHAA – at 42 U.S.C. § 3613(a)(1)(A) which provides "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State Court not later than 2 years *after the occurrence or the termination of an alleged discriminatory housing practice, . . . whichever occurs last,* to obtain appropriate relief with respect to such discriminatory housing practice or breach." (Emphasis added).

Plaintiff alleges in her FAC that she was denied adequate heating "on a regular [] and continuous basis throughout her tenancy: which began in 2009. ECF No. 1 at 19. She also states

---

[6] FEHA does not require the exhaustion of administrative remedies when the subject is housing discrimination. Fair Housing Council of Central California, Inc. v. Nunez, 2012 WL 217479 * 5 (E.D. Cal. 2012)

9

that the problem was not remedied until June 6, 2014, id. at ¶ 19, which would allow this action to proceed so long as it was brought nor more than two years *after the termination of the heating issue,* or no later than June 6, 2016. Plaintiff filed her original complaint on May 12, 2016, id., which is less than two years after remediation of the heating problem, if indeed it has been remediated. Her other complaints – leaks, mold, etc. – continue beyond the filing of the original complaint and are therefore also well within the statute of limitations.

Plaintiff also alleges that she has complained annually in about March or April of each year that the defendants have failed to calculate her entitlement to benefits properly from 2009 to the present. ECF 17 at ¶¶ 101-104. As this complaint remains unresolved it falls well within the statute of limitations as explained above.

Finally, even assuming that one or more of the challenged injuries does not fall within the statutory limits described here, the federal courts have developed an even more robust continuing violation exception to the normal statute of limitations analysis in cases such as this one. In Havens Realty Corporation v. Coleman, 455 U.S. 363, 380 (1982), a racial steering case, the court held that

> a 'continuing violation' of the Fair Housing Act should be treated differently from one discrete act of discrimination. Statutes of limitations such as that contained in § 812(a) are intended to keep stale claims out of the courts. . . . Where the challenged violation is a continuing one, the staleness concern disappears. Petitioners' wooden application of § 812(a), which ignores the continuing nature of the alleged violation, only undermines the broad remedial intent of Congress embodied in the Act. (Internal citations omitted.)

The Northern District of California expanded on the application of the continuing violation doctrine in National Fair Housing Alliance v. A.G. Spanos Constr., Inc., 542 F.Supp.2d 1054, 1060-1061 (N.D.Cal. 2008), noting that the doctrine prevents a plaintiff's complaint from being time barred if the defendant's related wrongful acts continue into the statute of limitations time frame. As a consequence, the statute of limitations only begins to run on the last act in a series of related wrongful acts. *Citing* Moseke v. Miller and Smith, Inc., 202 F.Supp.2d 492, 500 n.10 (E.D.Va. 2002). In other words, if the aggrieved person brings the lawsuit within two years of either 'the occurrence of an alleged discriminatory practice or the termination of an alleged discriminatory housing practice the statute of limitations does not bar the action. Garcia v. Brockway, 526 F.3d

10

456, 460 (9th Cir. 2008).

With respect to the Rehabilitation Act (or the ADA), although the limitation for that Act *is* borrowed from state law, it is the three year limitations period of Cal. Code Civ. Pro. § 338(a) which governs. Sharkey v. O'Neal, 778 F.3d 767, 772-773 (9th Cir. 2015). It is not Cal. Govt. Code 12989.1 as suggested by defendants. The three year limitation period makes the Rehabilitation Act claim obviously timely.

The plaintiff's federal claims are not barred by any statute of limitations and this element of the Motion to be Dismiss will be denied.

B.      *Breach of Contract Claim ( Claim 2)*

Plaintiff's breach of contract claims are subject to the four year statute of limitations found in California Code of Civil Procedure section 337. Plaintiff has claimed *annual* breaches of the contract with regard to proper computation of her rent and recertification credits for medical expenses from 2009 to the present. In Minidoka Irrigation Dist. v. Department of Interior of the U.S., 406 F.3d 567 (9th Cir. 2005), our Circuit Court addressed a dispute between a local district and the Department of the Interior that began in in 1963. Minidoka Irrigation Dist. v. Department of Interior of U.S., 406 F.3d 567 (9th Cir. 2005). The underlying contractual dispute arose between 1963 and 1985, but the district did not bring suit until 1991. Id. at 571. The district court found the action barred by the six-year statute of limitations which it held began to run when the Department repudiated the control sometime between 1963 and 1985. Id. The Circuit Court responded to the plaintiff's argument that the statute does not run against continuing violations that occur during the limitations period unless the defendant committed a single breach by repudiating the contract in its entirety. Id. at 572-573. The issue of continuing violations that may start the statute running anew each contractual year, versus a total repudiation, which starts the statute running and bars any claims at the end of the statutory period, is one of fact. Since the computation of rents is controlled by elements of the FHAA, the continuing violation doctrine would appear to the applicable to this claim as it is to the federal claims discussed here. At this point there are insufficient facts to determine this issue definitively as neither party has squarely addressed this dichotomy, and resolution is likely, in any event, to await development of facts

through discovery,[7] and perhaps cannot be ripe for resolution prior to either a motion for summary judgment, Mindoka I, or trial.

C.   *Liability Under California Civil Code § 1941.1 (Claims 7 and 9)*

This claim focuses on the mold issue which falls under the habitability statute which places a 3 year statute of limitations on issues arising thereunder. See Cal Code Civ. Pro. § 338. For the reasons given above, the motion should be denied. The three year time period and the continuing violation theory bars dismissal at this time.

It should be noted that defendants cannot make up their minds about the governing statute of limitations. At page 12, when discussing the Seventh Claim, § 338 applies. When discussing another § 1941.1 claim in the Ninth Claim, Cal. Code Civ. P. § 339(1) (oral contract) is the operative statute.[8] This is further reason to delay any final determination on the statute of limitations. Apparently the issue of the statute of limitations arose in the case of Cabrera v. Alvarez, 977 F.Supp.2d 969 (N.D.Cal. 2013), and the court put it aside finding summary judgment to be the proper vehicle for deciding it. Id. at 979 n.11. This court agrees with the Northern District.

D.   *Unruh Act, Cal. Civil Code §§ 51, 52 (11th Cause of Action)*

Defendants claim that Cal. Govt. Code § 12989.1 supplies the statute of limitations for Unruh Act claims. The undersigned is unaware of any federal court which has applied this statute of limitations for Unruh Act violations. While at one time the districts in California were undecided between applying the personal injury limitations statute, Cal. Code of Civ. Pro. § 335.1, and the three year statute, Cal. Civil Code § 338 (statutory violations), the district courts have finally decided upon section 338. Brown v Napa Valley School District, 2012 WL 1831539 * 9-10 (N.D. Cal. 2012); Gray v. County of Kern, 2015 WL 7352302 *6 (E.D. Cal. 2015), aff'd. in part, r'vsd. in part on other grounds, 704 Fed. Appx. 649 (9th Cir. 2017). Because neither of

---

[7] This was the second review of the case. In Minidoka I, 154 F.3d 924, 926 (1998), the trial court had granted summary judgment to defendant, but the Ninth Circuit reversed because the issue of continuing breach v. reputation of contract had not been considered below.

[8] The undersigned does not understand this argument. The lease was written. If there is an implied term of habitability in the *written* contract, the implied term does not change the written contract into an oral contract.

12

these statutes are argued by defendants, the statute of limitations motion should be denied for the 11th Cause of Action.

Perhaps more importantly, it is to be noted that the California Supreme Court has applied the continuing violation doctrine in cases of workplace discrimination practiced against a disabled person in <u>Richards v. CH2M Hill, Inc.</u>, 26 Cal.4th 798 (2001) focusing on the similarity between the antidiscrimination objectives of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, and the state Fair Employment and Housing Act, together with the express legislative intent that the FEHA be construed liberally. Such leads to a determination that the statute of limitations would not begin to run on workplace harassment until either accommodation is granted or a clear indication from the employer that no accommodation would be granted. 26 Cal.4th at 824. In 2005, the court revisited the issue and after determining that the defendant employer's actions were similar in kind and recurring, employee's complaints were never fully resolved. In the present case the defendant took some steps to address each of the deficiencies raised by the plaintiff over time, but did not take the steps necessary to finally bring the matters to a satisfactory conclusion, <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal.4th 1028, 1059 (2005), constituted a continuous course of conduct all of which was actionable. Applying this case law to this claim, the statute of limitations may not be used to successfully defeat the state claims arising from discriminatory conduct allegations at this stage of the litigation.

E.  *FEHA Claim (Twelfth Claim)*

California FEHA housing violations are constrained by a two year statute of limitations. Cal. Govt. Code section 12989.1. Defendants do not address the continuing violations theory. For this reason, the Motion on this claim should be denied.

F.  *Remaining State Claims (First, Eighth, Tenth Claim)*

The First Cause of Action (Claim) states a negligence and premises liability claim, and the Tenth Claim asserts negligent infliction of emotional distress. The two year personal injury statute, Cal.CodeCiv.Proc. § 335, would apply here. The Eighth Claim alleged a violation of California Unfair Business Practices. The limitations statute for this last claim is four years. <u>Eichman v. Fotomat Corp.</u>, 880 F.2d 149, 159 (9th Cir. 1989) citing Cal. Bus. And Prof. Code §

17208.  Due to the fact that the continuing violations doctrine has not been discussed at all in the Motion, and the facts are so undeveloped, the undersigned will not analyze the statute of limitations issues in this Motion to Dismiss.  They may be raised again, if appropriate, on summary judgment.

*CONCLUSION*

In light of the foregoing IT IS HEREBY RECOMMENDED that:

1. Defendants' Motion to Dismiss be DENIED with the exception of the § 2000a claim but if plaintiff desires to attempt to amend this claim, she shall indicate such in her objections;

2. If these Findings and Recommendations are adopted, the undersigned further recommends that Defendants shall file an Answer to the FAC within 30 days of this Order;

3. Further, within 30 days after the defendants' answer is filed and served, the parties should proceed to fulfill the requirements imposed by Federal Rule of Civil Procedure 26(a)(1).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 28, 2018

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE